NO. 07-03-0540-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 18, 2005
_____

BILLIE J. PASLEY,

Appellant

v.

DENNIS PASLEY and BARBARA PASLEY-DAVIS,

Appellees
_____

FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;

NO. 11,104; HON. STEVEN R. EMMERT, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

Appellant Billie J. Pasley (Billie) appeals from a judgment after a jury verdict in favor of appellees Dennis Pasley (Dennis) and Barbara Pasley Davis (Barbara) against Ralph Pasley (Ralph) and Billie.[1] Through 14 issues, she complains that the trial court: 1) erred in denying her second motion to recuse the Hon. Steven R. Emmert, 2) erred in continuing trial with only 11 jurors without her consent, 3) erred in allowing a judgment to be rendered against the Estate of Ralph Pasley when the Estate was not served with citation and did

_____

[1]Ralph Pasley is now deceased.

not participate at trial, 4) erred in refusing special issues on contributory negligence and laches, 5) erred in refusing to grant her motions to disregard jury findings, 6) erred in refusing to grant her motion for judgment notwithstanding the verdict, 7) abused its discretion "in voicing ex parte interruptions" of her counsel's closing argument, 8) erred in refusing to admit evidence of financial activity between R. J. Pasley Construction Company and Dennis and Barbara, 9) erred in allowing the testimony of Jerry Bob Jernigan, 10) erred in refusing to admit evidence of credits she was entitled to on a life insurance policy of Ralph, 11) erred in refusing to admit evidence of gifts made to Barbara "by Ralph Pasley from R. J. Pasley Construction, Inc.," and 12) erred in stating that it would restrict evidence offered by the defense because trial was running behind schedule. We affirm the judgment of the trial court.

### *Background*

Ralph Pasley was married to Helen Marie McCoin Pasley. Barbara and Dennis were their two children. Helen died in 1989 leaving a will which established two testamentary trusts. Ralph was named executor of the estate and trustee of the two trusts. Dennis and Barbara were beneficiaries under the trusts and substitute trustees of the trusts. Prior to Helen's death, Ralph began a relationship with Billie. He also purchased a ladies store in Shamrock for Billie and her daughter. After Helen's death, Ralph and Billie married. When Ralph died in 2001, he left the majority of his estate to Billie.

Dennis and Barbara filed a lawsuit for breach of fiduciary duty by Ralph and conspiracy by Ralph and Billie. The jury found that 1) Ralph did not comply with his fiduciary duties to Dennis and Barbara and willfully committed such acts, 2) Billie conspired with Ralph by knowingly participating and benefitting in Ralph's failure to comply with his

2

fiduciary duties, 3) various properties were acquired in part by funds commingled as a result of Ralph's failure to perform his fiduciary duties or from rollovers of earlier property affected by Ralph's failure to comply with those same duties, and 4) Dennis and Barbara had no reason to know prior to September 14, 1997, that Ralph had repudiated Helen's trusts. The jury entered a verdict favoring Dennis and Barbara, and judgment was entered upon that verdict.

## *Issue 1 - Recusal*

Billie claims in her first issue that the trial court erred in denying her motion to recuse Judge Steven R. Emmert. We overrule the issue for the following reasons.

She initially contends that the Texas Constitution prohibits a judge from sitting in any case in which he may have a pecuniary or personal interest in the outcome. Billie mentions no pecuniary interest which the judge may have in the outcome. So, that cannot be used as a ground warranting recusal.

Second, as for his alleged personal interest in the outcome, she cites to actions undertaken by the judge while in private practice. They include suing a corporation in which Ralph was an officer, holding funds in escrow for Ralph, writing title opinions covering property sold by Ralph and Billie, and expressing "personal upset that a prior motion [to recuse] had been filed." Billie conceded at the hearing upon her motion that there was no one item that would justify a motion to recuse; however, she argued that the trial court should consider the totality of the circumstances.

The trial court found, and we agree, that ownership of real estate is a matter of public record and there is no showing that Judge Emmert had gained specialized knowledge through his title work on any matter at issue in the case at bar. Nor does Billie

3

attempt to explain how Emmert's assistance in legal matters distinct from the current controversy prejudiced Emmert against her.

Further, the escrow account held on behalf of Ralph by the title company of Emmert while in private practice merely evinced a business relationship which did not require recusal. *See Woodruff v. Wright,* 51 S.W.3d 727, 737-38 (Tex. App.--Texarkana 2001, pet. denied) (holding that evidence a surgeon operated on the judge's mother several years ago and officiated as a substitute at the surgeon's wedding showed a mere business relationship or acquaintanceship between the judge and surgeon which did not require recusal in a medical malpractice lawsuit). Similarly, Judge Emmert did represent two employees of the R. J. Pasley Construction Company as beneficiaries of the company's defined benefit plan and trust against Ralph in 1994. But, there was no showing that he gained "personal knowledge of disputed evidentiary facts" involving the current case. Nor does the representation of those employees indicate that he had some bias against either Ralph or Billie, especially when she fails to describe the extent of Ralph's personal involvement in the suit and whether any acrimony developed between Ralph and Emmert.

As to the complaints of bias or impartiality based on Judge Emmert's comment that he was angry due to a prior recusal motion having been filed after he denied Billie's motion for summary judgment, Billie's counsel admitted that he did not file the motion until the Thursday prior to a Monday trial setting. Moreover, by the time the motion had been filed, jurors had already been notified to report for service. It would take extra work to notify them that they need not report. Counsel also admitted he could understand why Emmert would be unhappy about that situation.

4

Opinions formed by a judge on the basis of facts introduced or events occurring during the proceedings do not constitute a basis for recusal unless they display deep-seated favoritism or antagonism that would make a fair trial impossible. *Ludlow v. DeBerry,* 959 S.W.2d 265, 281(Tex. App.--Houston [14th Dist.] 1998, no pet.). The alleged bias in this instance occurred during the course of the proceeding. Further, the judge's alleged remark does not show deep-seated favoritism or antagonism so as to make a fair trial impossible. Indeed, it simply evinced reasonable frustration experienced by a judge when a litigant undertakes a belated course of conduct to disrupt the progression of a suit after discovering that the judge may not side with the litigant on particular matters.

In sum, none of the alleged grounds for recusal were sufficient to warrant recusal. Further, Billie cites to no cases, and we have found none, which indicate that we may consider the totality of all the alleged grounds when none of them individually are sufficient. Therefore, we hold that the trial court did not abuse its discretion in refusing to grant the second motion to recuse Judge Emmert.

### *Issue 2 - 11 Jurors*

In her second issue, Billie contends that the trial court erred in proceeding with trial with only 11 jurors. We overrule the issue.

After trial began and testimony had been heard, the trial court noted that a juror had been seated who had been previously struck by Billie. At that time, counsel for Billie indicated that Billie had already mentioned that fact to him. However, her counsel had made no objection prior to the court raising the subject. The court later stated on the record that trial would proceed by agreement with 11 jurors. Though the record does not

5

reflect that Billie agreed to so proceeding, it nevertheless illustrates that the trial continued with only 11 jurors. Additionally, nothing indicates that Billie voiced objection to that.

To preserve a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). Since the record does not disclose that Billie objected to the trial court's decision to continue with only 11 jurors, she neither complied with Rule 33.1(a)(1)(A) nor preserved the complaint for review. *See In re Lynch,* 35 S.W.3d 162, 166 (Tex. App.-- Texarkana 2000, no pet.) (holding that the right to a 12-person jury was waived when a jury of six was impaneled without objection); *Dickson v. J. Weingarten, Inc.,* 498 S.W.2d 388, 391 (Tex. Civ. App.--Houston [1st Dist.] 1973, no writ) (holding that because the appellant did not object to the trial proceeding with 11 jurors, the plaintiff waived his right to object on appeal).

### Issue 3 - Failure to Join the Estate

In her third issue, Billie contends that the trial court had no personal jurisdiction to render its judgment against Ralph because the Estate of Ralph J. Pasley was never named in or served with the original petition. Nor did it participate at trial. We overrule the issue.

Billie admits that "[i]n the documents appointing him as Independent Executor of the Estate of Ralph J. Pasley[,] Mr. Kessie did agree to be bound by the decision of the Court in this matter." Given this agreement and the fact that Billie is not the independent executor of Ralph's estate, we conclude that she lacks standing to complain of the purported defect.

### Issues 4 and 5 - Contributory Negligence and Laches

6

Billie alleges in her fourth and fifth issues that the trial court erred in refusing to submit to the jury special issues on contributory negligence and laches. We overrule the issues.

A trial court must submit questions, instructions, and definitions raised by the written pleadings and the evidence. TEX. R. CIV. P. 278. Additionally, the failure to submit an issue is not basis for reversal unless its submission in substantially correct wording has been requested in writing and tendered by the party complaining of the judgment. *Id.; Barnett v. Coppell North Texas Court, Ltd,* 123 S.W.3d 804, 824 (Tex. App.–Dallas 2003, pet. denied); *Doe v. Mobile Video Tapes, Inc.,* 43 S.W.3d 40, 50 (Tex. App.–Corpus Christi 2001, no pet.). Merely dictating the issue into the record does not suffice. *Jarrin v. Sam White Oldsmobile Co.*, 929 S.W.2d 21, 25 (Tex. App.–Houston [1st Dist.] 1996, writ denied). While Billie objected to the court's charge and dictated her proposed questions into the record, we find no separate written request for those questions in the record. Consequently, she failed to preserve the alleged error for review.

### Issues 6 and 8 - Jury Finding on Discovery of Breach of Duty

Billie claims in her sixth issue that the trial court erred in failing to grant her motion to disregard the jury's finding that Dennis and Barbara did not know and should not have known that their father was breaching his fiduciary duty to them before September 14, 1997. Similarly, she argues in her eighth issue that the trial court should have granted judgment notwithstanding the verdict because Dennis and Barbara knew or should have known that their father was disposing of their trust property. We overrule the issues.

According to Billie, the evidence showed that before 1997, Ralph was conveying property as Independent Executor of the Estate of Helen Pasley and as trustee of the

7

testamentary trusts. And, because those deeds were a matter of public record, Dennis and Barbara purportedly had constructive notice of his misconduct. Yet, the record also illustrates that the will through which the trust was created granted Ralph, as trustee and executor of the estate, the authority to sell and otherwise convey both the personalty and realty comprising the estate and trust corpus. Ralph having that power, we are left to wonder how conveying property by one authorized to do so places others on notice of misconduct. Billie does not explain that in her brief. Nor are we willing to say that it does as a matter of law, as she would have us do.

### Issue 7 - Jury Finding on Conspiracy

In her seventh issue, Billie challenges the trial court's failure to grant her motion to disregard that jury finding wherein she was found to have conspired with Ralph in committing the breaches of fiduciary duty involved. We overrule the issue.

The elements of a civil conspiracy are: 1) two or more persons, 2) an object to be accomplished, 3) a meeting of the minds on the object or course of action, 4) one or more unlawful, overt acts, and 5) damages as a proximate result. *Trostle v. Trostle,* 77 S.W.3d 908, 915 (Tex. App.–Amarillo 2002, no pet.). The jury answered affirmatively to the question: "Did Billie J. Pasley conspire with Ralph J. Pasley by knowingly participating in and benefiting [sic] from Ralph J. Pasley's failure to comply with his fiduciary duties to Dennis Pasley and Barbara Davis and was Billie J. Pasley's participation, if any, a proximate cause of the damages you have found?" Though she did not object to the wording or form of this question, Billie now asserts that there is not a scintilla of evidence of an object to be accomplished by the parties nor of a meeting of the minds on the object or course of action.

8

A conspiracy may be established by circumstantial evidence. *Lesikar v. Rappeport,* 33 S.W.3d 282, 302 (Tex. App.–Texarkana 2000, pet. denied). An agreement between parties on a course of action need not be formal but may be tacit. *J.T.T. v. Tri,* 111 S.W.3d 680, 684 (Tex. App.–Houston [1st Dist.] 2003), *rev'd on other grounds,* 162 S.W.3d 552 (Tex. 2005). It is also not essential that each conspirator have knowledge of the details. *Id.* Additionally, inferences of concerted action may be drawn from participation in the transactions and from the enjoyment of the fruits of the transactions. *Id.*; *Lesikar v. Rappeport,* 33 S.W.3d at 302, *citing International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 581-82 (Tex. 1963).

Here, evidence showed that Ralph never set up separate bank accounts for the estate or the trusts but commingled the funds in his own bank account.[2] Further, after he married Billie, his account was made a joint one with her. She also joined in a deed conveying part of the trust property which Ralph signed individually and as trustee with the proceeds going into their joint account. Additionally, Billie's son earned a fee of $11,000 on the sale of that property.

Moreover, other evidence depicts that Billie wanted Ralph to purchase a property known as "the Fain" residence even though he had already deeded to her the house on South Main Street in which they lived. The Fain residence was purchased and deeded to Billie in 1994 as her separate property. Billie's daughter then lived in the South Main Street home without rent. Around the time of Ralph's death, Billie, who was the sole heir of the

---

[2]The jury found that three homes, various annuities, an IRA account, two vehicles, a farm account at National Bank of Commerce, and the joint checking account were all acquired with commingled funds. This finding has not been challenged on appeal.

joint bank account under Ralph's will, transferred $153,000 from their joint account to her separate account. Although some of the money was replaced in the joint account, some was not. Billie's son and daughter additionally received payments of $6000 and $19,308.43 respectively from the joint account of Ralph and Billie for which there is no evidence that it was ever repaid. Moreover, within a month after Ralph's death, Billie changed the beneficiaries on one of the annuities (which the jury found had been acquired with commingled funds) from Dennis and Barbara to her own children. The jury could infer from this evidence that Billie knowingly participated in the financial transactions involving commingled funds and benefitted from them. This, in turn, would allow it to reasonably infer that she was part of a conspiracy.

### Issue 9 - Interruption of Argument

As her ninth issue, Billie complains of the trial court's *sua sponte* interruption of her closing argument. We overrule the issue.

Assuming *arguendo* that a trial court lacks the authority to correct what it perceives to be a misrepresentation of the record, Billie did not object to the purported interference. Instead, her counsel apologized to the court. Given the lack of an objection, she did not preserve her complaint. *See* Tex. R. App. P. 33.1(a)(1)(A) (requiring a contemporaneous objection to preserve a complaint for appellate review).

### Issues 10, 13, and 14 - Financial Activity of Construction Company

By way of her tenth, thirteenth, and fourteenth issues, Billie contends the trial court erred in excluding evidence of payments of monies being given by R. J. Pasley Construction Company (a corporation) to Dennis and Barbara. The evidence was excluded because it was deemed irrelevant. However, Billie believed that it tended to show that "trust money was being spent" improperly by Ralph, and that "would have put them on

10

notice and triggered the Statute of Limitations . . . ." So too was it evidence that neither child was being "deprived" of trust property, according to her. We overrule the issues.

The suit initiated by Barbara and Dennis concerned the fiduciary duties imposed upon Ralph due to his positions as executor of his dead wife's estate and as trustee of the two testamentary trusts she created. While one or more of the trusts apparently owned the stock of the construction company, Billie does not deny that the gifts and monies in question actually belonged to the corporation. Nor does she argue that the relationship between the corporation and trusts was such that the distinct entities were actually one and the same for purposes of asset ownership. Nor can we forget that a corporation is recognized as an entity distinct from those who own its stock. *Pabich v. Kellar,* 71 S.W.3d 500, 507 (Tex. App.–Fort Worth 2002, pet. denied). In other words, stockholders do not personally own the individual assets of the corporation. *In re Marriage of Thurmond,* 888 S.W.2d 269, 279-80 (Tex. App.– Amarillo 1994, writ denied). Given this, we cannot say that the trial court abused its discretion in concluding that payments or gifts made by the corporation to Barbara and Dennis were irrelevant to the issue of whether Ralph breached his fiduciary duties arising from his status as executor of the estate and trustee of the trusts.

Nor can we say that the trial court erred when it told Billie that it was going to "call[] irrelevance objections real close" and that it was "going to start narrowing this thing [the presentation of irrelevant evidence] down." We know of no authority that obligates a trial court to admit irrelevant evidence, and Billie cites us to none.

### Issue 11 - Evidence in Violation of Dead Man's Rule

11

In her eleventh issue, Billie argues that the trial court erred in "allowing the testimony of Jerry Bob Jernigan in violation of the Dead Man's Statute," that is, Texas Rule of Evidence 601(b). We overrule the issue.

Jernigan was not a party to the suit, and Billie fails to contend that he had an interest in the claims being litigated. This is fatal to her complaints since Rule 601(b) applies to the testimony of a *party*, TEX. R. EVID. 601(b) (stating that neither "party shall be allowed to testify against the others as to any oral statement by the testator, intestate or ward . . ."); *accord, Adams v. Barry,* 560 S.W.2d 935, 937 (Tex. 1978) (so stating), or a person having an actual and direct interest in the matter being litigated. *Tuttle v. Simpson,* 735 S.W.2d 539, 542-43 (Tex. App.–Texarkana 1987, no writ); *Ford v. Roberts,* 478 S.W.2d 129, 133 (Tex. Civ. App. – Dallas 1972, writ ref'd n.r.e).

### Issue 12 - Evidence of Credits

Finally, Billie complains of the trial court's failure to allow evidence of credits she is allegedly entitled to for maintenance of a life insurance policy on Ralph which was part of the assets of the trusts. We overrule the issue.

The argument proffered before us is founded upon §230 of the Texas Probate Code. That provision obligates an executor or administrator to care for the property of the estate. TEX. PROB. CODE ANN. §230 (Vernon 2003). Yet, nothing was said at trial about §230 or that it implicitly obligated Ralph to purchase life insurance to further his duties as trustee or executor. Given that the grounds for objection uttered below do not comport with those made here, Billie did not preserve her claim for review. *Moser v. Davis,* 79 S.W.3d 162, 169 (Tex. App.--Amarillo 2002, no pet.) (holding that the grounds supporting an objection asserted below must comport with those raised on appeal).

12

Having overruled each issue raised by Billie, we affirm the trial court's judgment.


        Brian Quinn
        Chief Justice